**McKissock & Hoffman v. Polymer Dynamics, Inc.**

*Jeffrey B. McCarron*, for plaintiff.
*Jeffrey W. Ogren*, for defendant.

KEOGH, *J.*, November 4, 2010—The petitioners filed

appeals of the court's September 28, 2010 orders denying their respective motions for reconsideration of the court's early orders, dated August 26, 2010 and September 20, 2010, which denied their petitions to compel arbitration. The appeals are ripe for decision pursuant to 42 Pa.C.S. §7320[1]. As they are related cases, this opinion addresses both appeals.

## I. PROCEDURAL/FACTUAL HISTORY

1. The respondent in the petitions to compel arbitration, Polymer Dynamics, Inc, (hereinafter "polymer"), filed a legal malpractice action against the petitioners in August of 2009, which is docketed as *Polymer Dynamics, Inc. v. McKissock and Hoffman, P.C., et. al,* Philadelphia County Civil Docket 0908-00607[2].

2. In July of this year, petitioner, McKissock & Hoffman, P.C., filed a petition to compel arbitration on the basis of an amended and restated fee agreement executed on August 28, 2008 which provided that "any dispute regarding payment of fees or reimbursement of costs on this matter shall be resolved by binding arbitration between the parties." Polymer challenged the petition. This court denied the petition to compel arbitration in an order dated August 26, 2010.

3. Polymer challenged the petition, in part, on the basis that McKissock & Hoffman, P.C (hereinafter "the

---

1. (a) GENERAL RULE. -- An appeal may be taken from: (1) A court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration).

2. Petitioners are represented by the same counsel in both the underlying legal malpractice action and in their actions to enforce the arbitration agreement.

firm"), did not conduct business after September 30, 2007 and that the fee agreement was entered into after the dissolution of the firm[3]. Thus, Polymer argued that since the firm was not a party to the agreement it did not have standing to petition for arbitration.

4. In response, petitioner J. Bruce McKissock filed a petition to compel arbitration, essentially identical to the petition filed by the firm. This court, in an order dated September 21, 2010, denied the petition to compel Arbitration.

5. On September 27, 2010, petitioners filed a notice of appeal to both the August 26, 2010 and September 21, 2010 orders.

6. Additionally, petitioners filed a motion for reconsideration of the court's order denying their respective petitions to compel arbitration. The motions for reconsideration where denied in separate orders dated September 28, 2010.

## II. DISCUSSION

Arbitration agreements are governed by the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7301, et. seq. An agreement to arbitrate can be asserted by preliminary objections or by petition. Such agreements are favored as an effective method of dispute resolution. Pursuant to section 7304 of the act, entitled "court

---

3. In the answer and new matter to Polymer's complaint in the legal malpractice action it was asserted in paragraphs 209 and 210 that "defendant, McKissock & Hoffman, P.C., did not continue to conduct business after September 30, 2007" and that "after September 30, 2007, the representation by Mr. McKissock and any affiliated associates was not as agents of McKissock & Hoffman, P.C."

proceedings to compel or stay arbitration," if a challenge to the agreement is raised the *"Court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party."*

If the validity of the agreement is not at issue, a court may be asked to determine if the party seeking arbitration has waived the right to enforce the agreement[4]. Waiver was held to have occurred in *Stanley-Laman Group, et. al v. Hyldahl, et. al.,* 939 A.2d 378 (2007 Pa. Super). The Superior Court affirmed the trial court's denial of preliminary objections which sought to arbitrate counterclaims raised by the plaintiffs' former employee. The employee had been hired as a portfolio manager and part of his employment documentation included an agreement to arbitrate any claims arising from a dispute with his former employer. The employee was terminated and the employer filed suit against him for breach of the employment agreement, including the use of confidential information in violation of Pennsylvania's Uniform Trade Secret Act.

There was a contentious pleadings battle, which included the employee filing an amended counterclaim raising claims that were subject to the parties' arbitration agreement. The employer filed preliminary objections in response and asserted that the claims were governed by the parties' arbitration agreement and should be arbitrated

---

4. *Zimmer v. CooperNeff Advisors, Inc.,* 523 F.3d 224, 231 (3d Cir. Pa. 2008) (the prevailing mood is to favor arbitration as an effective method of dispute resolution. Nonetheless, not every motion to compel arbitration must be granted. One of the accepted defenses to such a motion is that the party has waived its right to compel arbitration.)

separately. In response, the employee asserted that the employer had waived the right to arbitrate these claims. On the issue of waiver, the Superior Court noted that:

It is well-settled that [a]s a matter of public policy, our courts favor the settlement of disputes by arbitration." *Goral v. Fox Ridge, Inc.,* 453 Pa. Super. 316, 683 A.2d 931, 933 (Pa. Super. 1996). "Nevertheless, the right to enforce an arbitration clause can be waived." *Id.* "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherryill Assocs. Ltd. P'ship,* 416 Pa. Super. 45, 610 A.2d 499, 501 (Pa. Super. 1992). A party's acceptance of the regular channels of the judicial process can demonstrate its waiver of arbitration. See *Smay v. E.R. Stuebner, Inc.,* 864 A.2d 1266, 1278 (Pa. Super. 2004) (stating acceptance of judicial process includes a party's failure to raise the arbitration issue promptly, a party's engagement in discovery, and a party waiting until it receives adverse rulings on pretrial motions before raising arbitration). "However, a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Kwalick v. Bosacco,* 478 A.2d 50, 52 (Pa. Super. 1984). 939 A.2d 378, 383-384.

The Superior Court concluded that the employer had waived arbitration by pursuing the judicial process before seeking arbitration, and held:

> Here, the appellants did not promptly raise the issue of arbitration but instead waited until they had filed a petition for preliminary injunction and initial and amended complaints in the trial court. Hyldahl had filed multiple answers and counterclaims, and the parties had engaged in discovery. It is plain to see that SLG and by association the remaining parties, who are the officers of SLG and its sister entity, SLGS, accepted the judicial process when it sought and won injunctive relief from the trial court and by extension this court and continued to pursue their claims against Hyldahl in the trial court. To allow the appellants to take advantage of the judicial process and then take the case to arbitration would be exceedingly unfair to Hyldahl. Because the appellants sought relief from the judicial process and because the appellants could have compelled arbitration for any damages related to the alleged misappropriation of confidential information by Hyldahl after filing its initial complaint, we find that they have waived their right to arbitration. (citations omitted). *Id.* at 388.

Waiver was also held to have occurred in *Goral v. Fox Ridge, Inc.*, 683 A.2d 931 (1996 Pa. Super). In reviewing the trial court's denial of a motion to compel arbitration, the Superior Court noted that it was limited to making a determination of whether the lower court's findings were supported by substantial evidence and whether the lower court abused

its discretion in denying the motion. The homebuilder-defendant filed a motion to compel arbitration after the trial court had granted plaintiff's motion to compel discovery in the lawsuit brought by the homeowners alleging breach of contract resulting in the faulty construction of their home.

Although the defendant had raised the parties' arbitration agreement as an affirmative defense, the Superior Court upheld the trial court's finding of waiver since it determined that the defendants "did so, however, only as an alternative to their preferred option of winning a favorable ruling from the trial court. If the trial court were to find that some or all of appellees' claims were not barred by the applicable statutes of limitation, the doctrine of merger in the deed, or other defenses, then, according to appellants, such claims should be submitted to arbitration." 683 A.2d 931, 933.

Additionally, the Superior Court held that the defendants' "repeated references to the arbitration agreement are not sufficient to avoid a finding of waiver." *Id.* The defendants' timeliness argument was found to be disingenuous. The Superior Court concluded that had they truly wanted to, the defendants could have raised the issue of arbitration in preliminary objections rather than waiting nearly 19 months after the complaint was served before filing a motion to compel arbitration, which was prompted only after an unfavorable discovery ruling had been entered against the defendants. *Id.* at 934. See also *G.E. Lancaster Investments, L.L.C., et. al. v. American Express Tax and Business Services, Inc.*, 920 A.2d 850 (Pa. Super. 2007) ( Acceptance of

the judicial process and waiver of arbitration was found as company filed a motion to compel arbitration ten months after the writ of summons was filed and more than six months after the investors filed a motion to compel pre-complaint discovery; it was noted that the defendant-company could have sought arbitration immediately upon learning of any dispute between the parties.); *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. 1992). (Finding of waiver of defendant's right to arbitration upheld; defendant was precluded from pursuing arbitration once it had taken the first steps in accepting the judicial process, which included choosing not to file a petition to compel arbitration, not asserting arbitration as an affirmative defense, and waiting until it received an adverse ruling on pretrial motions before seeking to enforce the arbitration clause.)

Petitioners' assertion that they had petitioned for arbitration of the legal fees/costs owed to them by Polymer in a timely manner is likewise disingenuous. The arbitration agreement they seek to enforce is directly related to the legal malpractice action instituted by Polymer in August of 2009. Petitioners' representation of Polymer began in February of 2004 when petitioners replaced Polymer's trial counsel in the *Bayer* litigation instituted in federal court. Polymer was dissatisfied with the verdict that was returned in June of 2005 and an appeal to the third circuit was taken. Polymer retained special appellate counsel to assist in the appeal of the verdict.

The arbitration clause at issue is contained in the parties' "Amended and Restated Fee Agreement," which

was executed on August 28, 2008[5]. It recognized the parties' initial agreement for petitioners to take over the *Bayer* litigation in February of 2004, Polymer's financial difficulties, which resulted in the execution of a revised fee agreement in March of 2005 and the dissolution of the firm in 2007. It also set forth the basis for payment of legal fees and reimbursement of costs to petitioners if a favorable resolution of the *Bayer* litigation resulted from either appellate relief or settlement. It further recognized that, at the very least, Polymer would be responsible for the reimbursement of petitioners' costs associated with the *Bayer* litigation.

As noted, Polymer instituted a legal malpractice action against petitioners in August of 2009 by way of praecipe for writ of summons. A complaint was filed on December 8, 2009, which alleged that petitioners failed to properly challenge the application of a contract provision for limitation of damages and failed to advise Polymer to accept a settlement offer allegedly extended during post-trial mediation in the *Bayer* litigation.

Petitioners joined Polymer's special appellate counsel from the *Bayer* litigation as additional defendants.[6] Petitioners also filed preliminary objections to the complaint. The defenses of demurrer and lack of specificity to Polymer's claims for breach of contract, fraud and negligent misrepresentation were raised. The parties' agreement to arbitrate the legal fees and costs

---

5. The parties to the agreement are Polymer and petitioner, J. Bruce McKissock.

6. Jeffrey Lamken and Baker Botts, LLP, appellate counsel to Polymer during the *Bayer* litigation, were joined by way of praecipe on February 8, 2010.

owed by Polymer from the *Bayer* litigation was not raised in either the preliminary objections or by way of a motion to compel arbitration at that time.

An amended complaint was filed. Petitioners again filed preliminary objections to the pleading and again did not raise the arbitration agreement regarding any fee/cost dispute between the parties.

In April of this year, petitioners requested that the Polymer action be transferred from the general trial division to a specialized program designed to exclusively handle commerce cases.

This court initially denied petitioner's notice of program dispute, but after considering a motion for reconsideration, the request was granted and the matter was transferred to the commerce program on June 22, 2010.

In May of this year, petitioners were directed to comply with Polymer's discovery requests in an order dated May 12, 2010. Additionally, the preliminary objections to the amended complaint were overruled on May 27, 2010. An answer and new matter were filed by petitioners on June 30 and the statue of limitations was raised as a defense. Additionally, the new matter included the following allegations:

¶202 Plaintiff was obligated to pay defendants for legal services.

¶203 Plaintiff did [not] compensate defendants except for the payment in the amount of $25,000.00 which is substantially less than the amount due

pursuant to the fee agreement.

¶204 Plaintiff was obligated to pay costs.

¶205 Plaintiff did not pay all costs expended by defendants.

¶206 Plaintiff breached the fee agreement and converted funds which belong to the defendants.

¶207 Any recovery in this action is offset by the amount of the fees and costs due from plaintiff.

Although alleging a breach of the fee agreement, the petitioners never raised their right to arbitrate any dispute over the fees/costs they incurred during the *Bayer* litigation.

Based upon the foregoing, this court properly determined that petitioners waived their right to arbitrate any dispute concerning the payment of fees or the reimbursement of costs by Polymer to petitioners in connection with the *Bayer* litigation. Since the institution of the legal malpractice suit, petitioners have availed themselves of the judicial process in the legal malpractice claim and did not seek to enforce the arbitration agreement until after several unfavorable rulings were received and nearly twelve months after Polymer instituted the underlying action.

Petitioners' position would result in judicial inefficiency and would reward petitioners' dilatory action.

## III. CONCLUSION

The petitions to compel arbitration were properly denied. To arbitrate petitioners' dispute over the payment of legal fees and reimbursement of costs by Polymer to petitioners in connection with the *Bayer* litigation while Polymer's underlying legal malpractice action against petitioners stemming from the same litigation is pending would result in the bifurcation of related and connected disputes, thus resulting in judicial inefficiency. Moreover, petitioners waived their right to arbitrate the fee/cost dispute and availed themselves of the judicial process to the detriment of Polymer. Accordingly, appellate relief is not warranted.